My name is Karen Bucher. I represent the appellant, Zanil Bode. And in this case, I believe my issues are adequately covered by my briefs, and I'm prepared to submit unless the Court has questions. You had a request to broaden the Certificate of Appealability, and I'm wondering if you want to speak to that. I believe there were two issues. One of them was a dictionary issue and an instruction issue, I believe. There were three issues, Your Honor. Three issues. Okay. Well, the first issue had to do with the bailiff found a note in the jury room after the jury reached its verdict that had a definition of the words displayed and exhibited. All right. And those were the words that went to charges on which your client was either acquitted or there was a mistrial. They found him guilty of a lesser offense, brown-machined the gun versus exhibiting the gun. But my concern in that issue was they also asked, the jury also asked the Court for a definition of the words unequivocal, unconditional, and immediate, which goes to terrorist threat, which is count four, which he was convicted on. And the concern was that the jury also took a dictionary and looked up those words. There wasn't a piece of paper found, but I think that the Court should have had a ---- You're claiming ineffectiveness of counsel for failing to request a hearing? Or you're claiming that the superior court had a sort of spontaneity to hold a hearing even without a request? Both, Your Honor. I raised both issues in my certificate. Was the ineffective assistance for counsel claim, that particular claim, exhausted? Yes. I believe it was, Your Honor. I believe it means you're not sure. I mean, I know. I would have not argued it if it wasn't exhausted. Okay. And the claim of misconduct, the judge misconduct or the failure of non-misconduct? The jurors. No error in not ordering him to respond to hearing was also exhausted. Yes, Your Honor. I would say that's definitely so. I always check these things out before I would raise them. I want you to spend just a few words on the business about the threat, which is your claim, which is in your brief, violence as opposed to a threat. And I think it's your position that since these were just words, this had to be a threat rather than violent conduct. We're talking about Penal Code 69 resisting the next? Yes. Well, in California law under Penal Code 69, there is two sections of that Penal Code. One is a threat. One is violence. And one is the use of violence. In this particular case, the crime of assault. So what is it that separates the two? If somebody says I'm going to kill you and points a gun, is that threat or is that violence? That's a threat. Even though they've got a gun pointed? In my mind, that's a threat. A use of force is something different. See, I read the statute a little differently. I read it as defining an attempt versus a completed crime. Because every person who attempts, dot, dot, dot, every person who attempts to prevent an officer from performing a duty, that's the attempted crime. And then it goes on to say or who actually resists. So it looked to me as though the statute is defining an attempted crime, an inchoate crime, and also a completed crime. Correct. Every person who attempts a force of violence and then who actually does resist. Correct, Your Honor. It's attempt with threats. And the other one is use of force. So in my mind, one is attempt to resist with a threat, not with actual use. Okay. But who doesn't actually resist but who attempts to resist. Correct. Versus the completed crime of actually resisting. And as I understand, what happened here is the prosecutor said we're not going on an attempt. We're going as an actual completed crime. Correct. And he did surrender peacefully. And the prosecutor expressly abandoned that first prong of Penal Code 69. Right. They're not saying it's an attempt. They're saying it was a completed. Thanks. Thank you. Here we go. Good morning. May it please the Court. Deputy Attorney General Matt Mulford on behalf of the Warden. I have a few points I'd like to discuss. The first is the fact that the terrorist threat conviction, which is Count 4, is the sentence that Mr. Bode received his sentence on. He received a 27-year-to-life sentence for Count 4, which is not encompassed by any of the three issues in the Certificate of Appealability. At this point. Well, maybe so, but if the jury, if it was misconduct for the jury to use a dictionary, then we know they committed misconduct in their deliberations. And the question then is, did the misconduct infect the counts? We don't know. We know that they committed misconduct. That issue is not presently before the Court. You talked about it. You addressed it. You didn't say don't consider it. So you went to it. I'm sorry, Your Honor? You addressed it. You stood up and this is what you talked about. Fair enough. So it doesn't do any good, after I ask you a question about it, to say it's not before the Court. If that's what you want to take the position, that's fine. Okay. I had assumed you knew it and I knew it, and we were talking about it anyway, just in case it might come before the Court. It's not presently here. It should not come before the Court. Do you want to go back and argue that? That's fine. I was asking you about the things you actually argue, you stood up and talked about. You don't want to answer a question about that? You're going to stand there and make an argument, but if I ask you a question about it, you're going to say, look, we shouldn't be talking about it at all because it's not before the Court? What's the point of that? Why stand up and address it then? My point? I asked you a question. I'm sorry, Your Honor. Do you want to answer the question or do you just want to go on to something else? I would be happy to answer the judge's question if you'd please repeat the question because I apparently do not remember the question.  I do not remember the question. Well, maybe I'll just remain unanswered. Do you agree with me that the statute defines both an attempt and a completed crime? I'm sorry, Judge Silverman, I don't think that I do. California Penal Code section 664 is actually the catch-all provision for attempt crimes. And so I do not believe and I'm not aware of any California authority that splits Penal Code section 69 in the way you describe it. Do you have it in front of you? I'm sorry, what? Do you have it in front of you? Penal Code 69? Yeah. Yes. Okay. The first three, first four words are every person who attempts, right? Yes. And then after the clause there, it says, or who knowingly resists. I don't understand why the first prong isn't attempting to deter or prevent. And then or who knowingly resists. In other words, it's at that point the completed offense. It's certainly a fair reading based on the statutory language, and I very much understand the question and the thrust of the question. My understanding of Penal Code 69, as it's been interpreted by the California Supreme Court in a case called Manuel G., does not favor such a reading. And I believe the reason that the California Supreme Court would do such a thing is because there is an additional California Penal Code section, section 664, that generally encompasses attempts. Frankly, I've never heard anyone in a state court make the distinction that you just made. It's a certainly one that makes a lot of sense to me. I just don't think that that's how the statute is actually used and implemented in practice. And it's not how it's presented to the jury. That's correct, Your Honor. Yeah. The jury instruction was limited to the second half of the statute. Right. That's not inconsistent with what I'm saying. It's not. No. The State's theory was that this guy actually resisted. That's correct. Not that he attempted to resist. Yes. But that he resisted. We would agree. What's inconsistent with that? But the question is whether it was by threats or by force. Right. And I think there's no distinction between it, which would go back to your question earlier, Judge Kuczynski. Is the use of a gun plus verbal words, could that be violence by itself? And yes, I think that's the answer. Your argument was when you rack the shotgun and say I'm going to blow your head off, that's force. That's correct. That's violence. That's good enough. And nothing else really matters at that point. Well, no. What you're saying, that is violence. It's not a threat. But there is such a thing as just a threat. There could be. You know, I'm going to kill you if you sort of have an argument with somebody and say it in anger. I'm going to kill you with no apparent means to do it. And, you know, that could well be a threat. Nobody's scared. Nobody really takes it seriously. But it's a threat. I would agree with that. Yes. I can see three different. And I think the problem here was created by the fact that the government argued this was actual violence, even though words were used. That's correct. There's no actual sort of hitting somebody. And so when sort of the gray area where the words plus some conduct or words plus some sound, you know, basically conduct amount to more than threat, whether it actually amounts to actual violence. I guess it's petitioner's position that so long as you're not making bodily contact, so long as you're not using actually hitting somebody or shooting them, you're not actually making contact. If I understand the position correctly, then it's a mere threat. It's not violence. I think that does state their position clearly. I think if we can think of this, there's three possible circumstances. There could be a threat alone with no other action at all, an unarmed person who made a threat to kill someone. That would clearly be just a threat. We could have someone who had a weapon and displayed it or racked it and made the sound of using the weapon and didn't articulate any sounds. And I think that would be clearly violence by itself. Or I have a situation here in which both of those things occurred. We have the threat to kill, and we have the action of violence and racking the gun. Well, I don't think petitioner would concede that the second case is violence. I think she would say it's still a threat. I think that's true. You're not making contact. You are, although not using words, you are sort of like saying boom. And although that's not necessarily a word or making a mouth sound that sounds like a slashing or something. That's not necessarily a word, but it's construed as a threat. And you would say if there's an apparent capacity to carry out the threat, then it becomes violence. I think that's correct, yes. That's our position, yes. I suppose they had the gun but didn't point or cock it or knew nothing about it. You'd still, violence, so far as you're concerned, the violence prong is satisfied when he takes the gun in his hand. The facts in this case are the officer heard the gun being racked. And the testimony was that that is a very distinctive sound. That's at page 248 of the executive record. So I think the officer knew there was a gun that wasn't being racked. And so that argument is violence. Had he stopped short of racking the gun, then it wouldn't be bad. It's a much harder question, Your Honor. I have a couple minutes. I would like to talk about the counsel's tactical decision and the state court's decisions regarding the concessions and closing argument. Our cases say it's chronic error. That's correct. Yes, Swenson does say it's chronic error. Bell v. Cohn and Yarbrough v. Gentry from the United States Supreme Court, I think, cast doubt on that. First of all, chronic is dicta itself. There's no finding of relief in the chronic case. So under the 2254 death statute, chronic by itself doesn't give the petitioner very much to work with. You know, standing there and talking about Supreme Court dicta is really sort of silly. If the Supreme Court says it, it's the way it is. You know, slicing a salami so certain it says dicta. We respectfully disagree. Well, certainly our case law takes it seriously. It does. And if this case arose on direct appeal, then I think Swenson would be in trouble. No, because Cohn certainly didn't say, oh, we didn't mean what we said in chronic. They distinguished it. They said this is a different case. But they certainly didn't say you can ignore that. It's dicta. We didn't mean it. First of all, I think that 2254 gives my office and prosecutors the ability to argue that chronic doesn't mean that in cases that arrive from state courts. So that's the first point. The second point, though, is as soon as we start talking about whether defense counsel had the tactical decision in making their decision to concede the all-concluding argument, I think it's very clear that there are at least two tactical reasons in the record. First of all, counsel is very afraid that an Orange County jury, a very conservative county, would convict his client on all counts simply by learning that he had been a felon. I think that is a reasonable theory. And what difference would that have made in the sentence? Well, it would have been 39 for life as opposed to 27 for life? Is that the difference? Perhaps, yes. When counsel conceded, obviously. That's such a big difference. Respectfully, I disagree. The bigger that it is a big difference. No, I was trying to analyze it. I mean, you have to serve at least a minimum number of years before you can be considered for parole. For Mr. Bode, who I believe was 41 at the time of his sentence, if he is eligible for parole after serving 20, there is a possibility he may be released before he dies in prison. If he had a 30-year or a 50-year sentence, which I think is much more likely, he would die in prison. So I mean, that is a meaningful distinction for Mr. Bode. The second prong that we emphasized in our supplemental brief is that it is by no means certain that Mr. Bode was guaranteed a life sentence at the time the concessions were made. There was an argument at the sentencing hearing where defense counsel asked the trial court to not impose the three strikes law and made a very strong and well-reasoned argument that the trial court simply rejected. At the time of the concession, though, when the defense counsel made that concession and closing argument, he was addressing the jurors, certainly, in trying to gain their sympathy and get them to acquit on charges that there was reason to argue for. And he was also directing that to the trial court to pave the way for the Romero argument that he was surely contemplating at that time. And the fact that he was unsuccessful later, it doesn't change the fact that it was a legitimate, tactical decision. And as soon as we're talking about that ---- I'm sorry, Your Honor? If the defendant had been a convicted of all counts, he couldn't have made that argument? He could have. I guess my point is that by conceding guilt and by acknowledging responsibility for some of his actions and by taking a moral high road, I think there was a greater chance, or at least it is a reasonable belief, there was a greater chance of swaying the judge and getting sympathy from the judge. And by doing that at an earlier stage in the proceedings and not waiting until months later at the sentencing hearing, I think counsel could make a tactical decision to make that argument. And as soon as we're talking about what kind of tactical decisions counsel is making about that, it takes us out of the realm of chronic. It puts us squarely in district court. Well, it's a little more than a tactical decision not to present evidence. This basically tells the jury, you don't have to go back there and think very carefully about these. You don't have to weigh the evidence. You don't have to really think about the credibility of witnesses. I'm the defense lawyer. I'm the guy who's paid to make sure that my client isn't convicted unfairly. And I'm telling you, I know everything you've seen. I probably know a lot of stuff you haven't seen. And he's guilty. Go ahead and convict him on those things. It is sort of a short circuit of the process where the lawyer is supposed to say, look, you go back there and you think carefully and you weigh the evidence and you have to believe the witnesses. It does make it much easier for a jury to go back and convict on those counts. And then they're discussing only the remaining counts. I mean, isn't that – it's not like deciding to lose evidence or not. It's giving up the jury's function, essentially, with respect to those counts. In a different case – Send him on to a guilty plea, isn't it? No, I don't think so. Well, I don't think so. Tell me how it's different from a guilty plea, except that it gets executed through a jury. When you tell the jury, look, he's guilty of these counts. In that sense – Isn't that essentially sort of taking away the client's prerogative, which is whether to plead guilty to the crime or not? Can a lawyer really do that? There are three different points in there I think I'm trying to separate out. The problem – in some sense, yes, it is tantamount to a guilty plea. The problem for this case, though, is that it's very unclear whether Mr. Boat actually was offered a guilty plea. Because of the severity of the charges against him, there may have been, and the record, as far as I can tell, is silent as to whether or not there was any attempt to make the plea happen. I'm sorry. You're missing the point of Judge Kaczynski's question. I'm sorry. How can the lawyer go up and tell a jury that the guy is guilty without going through all the – Because in this – because in this case, the points that – Maybe should I let Judge Silverman ask the question? I'm sorry. In this case, the – all of the things that Judge Kaczynski was talking about, about making credibility determinations and fact findings based upon the evidence, could have been short-circuited simply by the fact that an Orange County conservative jury may have believed that Mr. Boat, by virtue of the fact that he was a felon, was guilty from that point on and did nothing else. Isn't it a better answer that this was a tactical judgment because it had other things? He didn't have a defense to being a felon in possession. And that's just – But he did have a defense to other charges and in fact was acquitted of other charges, including other mandatory sentencing provisions. That's exactly right. He's not going to win on being a felon in possession. You may as well concede that and husband your resources and argue what you can argue. And this guy did, in fact, get acquitted of what? Yes, that's exactly right. What was he acquitted of, do you recall? He was acquitted of the count one charge, which was the most serious charge. felony assault with a semi-automatic weapon. Correct. Two counts of terrorist threats. Correct. And most significantly, the allegation that he personally used a firearm. On three charges, yes. Right. So given that he had no defense to the things he conceded, he was able to pull some miracles out with this other stuff. Exactly right. And that saved him about 19 years in prison. Yes. That's not a very good answer, is it? I'm sorry? I mean, you're nodding, but that's not a very good answer. I liked it. You're supposed to ask questions. That's not a very good answer. Essentially, a jury can – I mean, you were talking about conservative Orange County juries. Let's say, you know, a guy with a gun here in his home. A guy's entitled to have a gun in his home. The government shouldn't be going around making that kind of conduct criminal. Not with a felon, Your Honor. Excuse me? The California legislators. No, we're talking about conservative Orange County juries. And what they might find, when the jury – when the lawyer says, you go there and convict my client, that deliberation stops. I mean, maybe there were witnesses here. Maybe all the witnesses were credible. Maybe they're not all entirely credible. But essentially, when the lawyer says, you convict him of this, the jury doesn't even have to go through the steps of seeing whether every count – every element of every count is, in fact, supported by evidence. They don't have to do that. At that point, it really is, you know, as you can see, the Tantamount to a guilty plea. The controlling authority. Can a lawyer, without going through the process of the guilty plea colloquy, can he give up the right of the defendant to have a jury actually make a determination as to guilt? Yes. Under Strickland, yes. But the person who is best able to make that decision for the client is the defense attorney, who has sat through the trial, who has cross-examined all the witnesses. No, no, no. You say that, but Strickland certainly does not say that. Strickland doesn't say that. That's you saying that. Do we have a case that says that? Yarborough v. Gentry says that we must be doubly deferential to defense counsel's closing arguments under the ADEPA version. Was there a case where the lawyer said my client is guilty of the following four counts? No. So it's really not a case on point, is it? That says that. It does not say that. My question was, when the lawyer says go ahead and convict, is there a case under Strickland that says that is a tactical decision? Not from the United States Supreme Court. Any court? Well, the state court here found that it was a reasonable decision under Strickland, and that's why we're here. Published opinion? From other circuits, certainly, yes. Not a published opinion in this case. Not a published opinion in this case, no. Any published authority from the California courts? Not that I'm aware of. You know what can be a concern, too, Mr. Mulford, is the question Judge Kaczynski asked you earlier about the counsel making the concession that would normally be made by the client. If the client decided to be guilty, they would discuss it, and the client would say, all right, I'll do it. Or, no, I won't do it. Here, that step in the question, Judge Kaczynski asked you, was eliminated, wasn't it? Well, there's no record that we had that discussion. There's no record that we didn't have it. True. Or that we did have it. What the record shows is counsel made the decision. Made the decision. There's no one that executed it. I'm sorry. Now, suppose the counsel had done not a trial, but with a prosecutor. And as they discuss the case, and he says, well, my client is guilty of that. My client is guilty of that. You would not argue that that was appropriate behavior for defense counsel. I don't think. Maybe you would. Depends on the circumstance, Your Honor. I mean, in a case like this where the prosecutor may not argue. I'm sure you're going to lose every time. Because the defense counsel is hard to defend. He certainly can't go to the prosecutor without any word from his client and say, unless they were doing plea bargaining. If it's plea bargaining, yes. But in the absence of plea bargaining, when he says, I'm trying your guy for all of these scams, as you did. Then he says, well, you don't have to worry about this when he's guilty. You don't have to worry about that when he's guilty. We'd give him a new lawyer in about two seconds, don't you think? Perhaps. But an extremely guile and resourceful defense attorney may well have discussed this concession with his client and received the client's permission to do so. Okay. Now, that's a different story. And at that point. But on this record, there's no showing. On this record, we have no showing about it. That's fair. But normally when a client wants to concede guilt, we have a procedure which the Constitution mandated. He has to stand in front of the judge and personally, not through his counsel, admit guilt, express awareness of his constitutional rights that he's giving up, including specifically the right to have a jury of his peers actually make a determination of guilt. True. That's what we require. That's what the Supreme Court requires. Actual, out of the mouth of the client, in open court, looking face-to-face with the judge. Even then the judge can look at him and say, look, I don't think you understand what you're doing. I'm not going to accept it, plea, because I think maybe you don't fully understand your rights. Or, gee, I'm not sure that you're competent to make that decision because you look like you might have been up all night and you look tired. You come back after you sleep on it. Judges do that all the time. And there's a particular reason. We have a Supreme Court decision that says when you give up those rights, when you give up the right to have a jury decide guilt, you're giving up fundamental personal rights. And we have you standing up and not taking a word of your lawyer that's okay. A lawyer can't plead guilty for a client. Now, that was short-circuited in this case. Even if your answer to Judge Ferris, you know, conjecture as to what must have happened or might have happened between lawyer and client were correct, it wouldn't matter. I mean, you know, maybe it happened, maybe it didn't happen that way. We require constitutional procedures, including words coming out of the mouth of the client in open court looking at the judge face-to-face in order to give up those rights. There's – that's true. There – in this case, though, I mean – Well, I guess you're not going to argue that that's a debatable point under Lockheed Vazard-Rabbi? That's clearly established Supreme Court law, right? I – in the context of the guilty plea, I didn't see – I saw nothing incorrect with what you were saying. Well, but isn't this an end run around that procedure? Not necessarily. You know, that's such a lawyer's weasel. Is it or isn't it? What do you mean, not necessarily? In some circumstances, it might be. When the lawyer stands up and tells the jury, convict my client of these counts, is it or is it not an end run around the procedure that the Supreme Court has mandated, which says the client has to stand up and give up that right to a jury determination himself? Not when counsel can make a tactical decision that may reasonably – a reasonable person could think would be more beneficial than when – Is that your final answer? If you just call it tactical? What if the lawyer stands up in court and says, you know, Your Honor, we were going to try, but I'm making a tactical decision that I'm going to plead my client guilty to six of the four – ten counts? Is that a tactical decision? Is that covered by Strickland? And the judge says, you know, that sounds like a good idea to me because I don't think you have any evidence to support the defense. Guilty plea accepted. It might very well be. Would that be a tactical decision? You know, he decided not to take off the judge by going to trial on ten counts. You know, curry favor with the court? It might very well be. The problem with doing that in this case – You really want to take that position on behalf of the Attorney General of California, that if the lawyer stands up pre-trial and says, I'm pleading my client guilty as a tactical decision, that would be protected? You really want to take that position? I – yes. There may be reasons why. Okay. I don't – under Strickland, if we put the defense – I don't think there's anything more to be said. Thank you, Your Honor. Ms. Buchuth, anything you need to add? Mr. Mulford, you'll be happier the next time you come if you check to see how many cases are going to be argued, not get on the calendar where there are only a few. Thank you, Your Honor. I've got a question for Ms. Buchuth. Was there a defense to the felon in possession charge? There was some evidence in the record that the guns belonged to his girlfriend's wife, Debbie Weil. Well, he's not charged with owning it. He's charged with possessing it. Is there any defense to being a felon in possession of the gun? He was apparently seen holding the weapon, right? As far as I can say, there wasn't much of a defense, except for even when there's no defense available, if the decision is made to stand trial, the defense counsel has to put the prosecution to a heavy burden to prove each element of the crime, and that's from chronic. Okay. Well, that's one way to do it. One way is to stand up and say, you know, they may have seen him holding the gun, he may be a felon, but, you know, you should apply reasonable doubt and sit down. That's one way to handle it. Another way would be to say, look, we have no defense to this, but we have defenses to felony assault with a semiotic weapon, two counts of terrorist threats, and an allegation that he personally used the firearm. Concede what you can't defend and impress the jury with what you can defend. That's another way to handle it. That is one way. And it turned out to work, at least as far as these other charges are concerned. Except for this case, it's a little different. This was a three strikes case, and any felony would have sealed his life in prison. So I couldn't see any strategy in any way to concede. Can't change the maximum, but he was able to change the mandatory minimum, right? It could have been worse than 25 to life for this guy. It could have been. It could have been, I think by your brief, he could have been 39 to life or something like that. Right. Yeah. Well, if you have no defense, why shouldn't, isn't 25 to life better than 39 to life if you have no defense? Well, I don't know. If any count will send someone to prison for life, especially when you're in your 40s, I just don't see any strategy. Well, it's not a great situation to be in, I grant you. But if you're going to go to 25 to life anyway, isn't it better to go for 25 to life than 39 for life because you can get out sooner? Except for the counsel would have not known that. There's just no way to know what the court's going to do. I can see your point, and I understand it. But at the time of trial, there's just no way. Well, there's no guarantee. But, I mean, it felt like this guy just, you know, walked in from outer space and came up with this. I mean, there's, looking at it now, I mean, there would be plausible explanations for why you would try to concede things for which you say there's no defense and depend on the things there are defense. And then he would obtain a tangible advantage by pulling it off this way. I guess, clearly, a lesser sentence is better than a greater sentence. Right. In any case. Well, I think your point was, as I read in your brief, is that Laurie can just stand up and not argue the counts that he wants to concede. I mean, he does not say very much about them. Different to say, go ahead and convict him. Right. He doesn't have to spend a lot of time, if any time at all, talking about the counts that he doesn't think he has a very strong case on. Right. To put the government to its burden of proof and see what the jury does. You don't think it's ever a rhetorical device to concede things, concede a point here and there, so that you can bolster the things that you can really argue about? Of course. The case that the magistrate judge cited, Anderson v. Calderon, the Ninth Circuit case, was a death penalty case. And the, during closing argument, the attorney conceded that he did commit the crime, the murder. And it wasn't found ineffective because, first of all, the client had admitted to the homicide, but what the attorney was doing was asking the jury to find him not guilty of the murder, so he wouldn't fall under the felony murder rule, so he wouldn't maybe perhaps avoid the death penalty. So there's a method to the madness. In that particular case. Why isn't that the same thing here? He argued to the jury. You read the closing argument. He argued to the jury. We don't have a defense to this guy being a felon in possession. But we do have a defense to these other things. And it turned out to be successful. He got acquitted of the other things. I'm not sure. I don't know what the jury would have done. I just, I understand what the argument is. But any conviction on any counts of those nine counts would have sent him to life, and I just think the strategy wasn't there. Thanks. Thank you. Well, I guess other case Brody is Brody. I got confused. Brody and Brody. We have Brody too. Yes. Next case is Brody versus District Court. Only two cases today? I think it was three or something.
judges: Farris, Kozinski, Silverman